RCVD - USDC - CHAS, SC
2026 AUG 28 PM 1:52

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jay Connor,<br><br>Plaintiff,<br><br>Vs.<br><br>CWPVA, Inc. d/b/a Home Genius Exteriors and John Does 1-10.<br><br>Defendants. | C/A No: 2:26-cv-3685<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff complaining of the Defendants alleges as follows:

**TYPE OF ACTION**

1. This is an action to recover statutory damages imposed by 47 U.S.C. § 227, and trebled damages constituting forfeiture or other penalty and S.C. Code Section § 37-21.

**PARTIES**

2. Plaintiff is a resident of Charleston County, South Carolina.

3. The calls ("Calls") alleged in this complaint were made to Plaintiff's wireless phone line in South Carolina.

4. Defendant CWPVA, Inc. d/b/a Home Genius Exteriors (hereinafter "HGE") is a Nevada corporation.

5. Upon information and belief, HGE's principal office is located at 8201 Corporate Drive Suite G10, Hyattsville, MD 20785.

6. HGE conducts and transacts business in South Carolina.

7. HGE either directly, or by those on its behalf, calls residents of South Carolina, or causes the calls to be made to residents of South Carolina.

8. The true identity of John Does 1-10 are unknown at this time.

9. Upon information and belief, John Does 1-10 placed one or more of the calls alleged herein for Defendant HGE.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

11. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under the South Carolina Telephone Privacy Protection Act, S.C. Code Section 37-21, because the state claims arise from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and add little complexity to the case. Furthermore, pursuant to Section 37-21-100, "Nothing in this chapter must be construed to limit any remedies, causes of action, or penalties available to a person or governmental agency under another federal or state law."

12. This Court has specific personal jurisdiction over Defendants because they purposely availed themselves in conducting business in South Carolina and calling an individual with a South Carolina area code.

13. This cause of action arises out of conduct of Defendants initiating or causing telephone solicitations via telephone calls to Plaintiff's wireless telephone number in Charleston County South Carolina.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the complaint, namely, the illegal telemarketing conduct, took place in this District because the calls were sent into this District to a South Carolina area code.

## The Telephone Consumer Protection Act

15. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on

phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

16. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

17. The TCPA provides a private right of action under section 47 U.S.C § 227 (c)(5) for a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under the subsection.

18. The TCPA also provides a private right of action under section 47 U.S.C § 227 (b)(3) for a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under the subsection.

**The South Carolina Telephone Privacy Protection Act**

19. On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10, et seq.

20. The SCTPPA requires that "at the outset of a telephone solicitation, a telephone solicitor shall provide…the name of the person on whose behalf the telephone solicitation is being made." 37-21-40(A).

21. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

22. The SCTPPA provides a private right of action under section S.C. Code § 37-21-80 for a person who has received a telephone call in violation of the regulations prescribed under the statute.

**Factual Allegations**

23. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

24. Plaintiff never provided prior express written consent to receive prerecorded messages from Defendants.

25. Plaintiff requested that Defendant HGE place his number on its DNC List.

26. To generate clients for its business, Defendants rely on illegal telemarketing calls, such as the ones placed to Plaintiff.

27. Defendant HGE directly participated in the Calls alleged herein, had knowledge of the Calls, or by failure to act, allowed such calls to be made.

28. Plaintiff is the sole subscriber to the wireless telephone number (843) 718-XXXX.

29. Plaintiff uses the cellular telephone as a personal residential number.

30. Plaintiff placed the number (843) 718-XXXX on the National Do Not Call Registry in 2021.

31. Upon information and belief, between June 30, 2026 through August 5, 2026, Plaintiff received at least five (5) calls by or on behalf of the Defendants.

32. A list of the alleged calls ("Calls") and corresponding dates and Caller IDs is as follows:

1. 6/30 803-400-3211
2. 7/7 843-331-1427
3. 8/3 843-805-5854
4. 8/4 843-286-2056
5. 8/5 843-569-0598

33. The 6/30 Call and the 7/7 Call transmitted identical prerecorded messages.

**The 6/30/26 Call**

34. For example, on June 30, 2026, Plaintiff received a call (hereinafter the "6/30/26 Call") to his wireless number, (843) 718-XXXX.

35. The 6/30/26 Call transmitted the Caller ID 803-400-3211, a non-working number.

36. The 6/30/26 Call began with a prerecorded message from "Eva" calling from an unidentified company.

37. The purpose of the call was to deliver a solicitation for home repair services for the Defendants.

38. The message started as:

> " Hi, this is Eva. We're offering free estimates and exclusive discounts on home remodeling projects. Are also locking in pricing for up to 18 months to avoid rising costs. Just to see if you qualify, do you currently own your home?"
>
> "Excellent. I have a remodeling specialist who can - Through your area's offers and answer any questions. Just a moment please."

39. The sound and tone of the voice was unnatural, had unnatural pauses and cadence.

40. Plaintiff was transferred to a live representative who identified herself as Abigail.

41. Abigail began to qualify Plaintiff for a home remodeling project, then disconnected the call.

**<u>The 7/7/26 Call</u>**

42. On July 7, 2026, Plaintiff received a call (hereinafter the "7/07/26 Call") to his wireless number, (843) 718-XXXX.

43. The 7/07/26 Call transmitted the Caller ID 843-331-1427, a non-working number.

44. The 7/07/26 Call began with a prerecorded message from "Eva".

45. The purpose of the call was to deliver a solicitation for home repair services for the Defendants.

46. The message started as:

> "Hi, this is Eva. We're offering free estimates and exclusive discounts on home remodeling projects. Are also locking in pricing for up to 18 months to avoid rising costs. Just to see if you qualify, do you currently own your home?"
>
> "Excellent. I have a remodeling specialist who can - Through your area's offers and answer any questions. Just a moment please."

47. The sound and tone of the voice was unnatural, had unnatural pauses and cadence.

48. The voice, name and script in the recorded message of the 6/30/26 Call was the same as the recorded message in the 7/07/26 Call.

49. Plaintiff replied "yes" to the question and was transferred to a live person who identified himself as "Christopher Nelson". Plaintiff engaged with Mr. Nelson to investigate the source of the unwanted calls.

50. Plaintiff provided a call back number to Mr. Nelson and the name "Andy Nix" solely to track the call and identify the parties.

51. Nelson asked Plaintiff about home improvement and remodeling, offered to provide an estimate for home improvement services, and eventually transferred Plaintiff to an individual who identified herself as "Danny Morrison with "Home Care Services", a fictitious, non-existent company.

52. Plaintiff was ultimately transferred to "Milo" with Defendant "Home Genius Exteriors" aka HGE, who attempted to set an appointment with Plaintiff for 10:00 am on July 9, 2026.

53. This appointment attempt confirmed HGE's involvement in the 7/07/26 Call.

54. Plaintiff was contacted again on 7/07/26 shortly thereafter via text from Home Genius Exteriors for "Andy", the name Plaintiff provided to Mr. Nelson earlier, also confirming HGE's involvement in the 7/07/26 Call.

55. A copy of the text is attached hereto and incorporated herein as Exhibit A.

56. On 7/07/26, Plaintiff instructed HGE manager Ben Simonsen to place not to call his number again.

57. On 7/07/26, Plaintiff sent a letter to Defendant HGE informing them of the unwanted calls, requested evidence of consent for the calls, and requested that HGE add his number to their Do Not Call List.

58. Defendant HGE did not respond to the letter.

**The 8/3/26 Call**

59. On August 3, 2026, Plaintiff received a call (hereinafter the "8/03/26 Call") to his wireless number, (843) 718-XXXX.

60. The 8/03/26 Call transmitted the Caller ID 843-805-5854, a non-working number.

61. The purpose of the call was to deliver a solicitation for home repair services for the Defendants.

62. The person calling identified himself as Michael with "Home Care Services", the same fictitious company name used in the 7/07/26 Call to Plaintiff.

63. The purpose of the call from Michael was to sell Plaintiff home services on behalf of the Defendants.

64. The 8/3/26 Call was made after Plaintiff's verbal and written Do Not Call request to Defendant HGE on 7/07/26.

**The 8/4/26 Call**

65. On August 4, 2026, Plaintiff received a call (hereinafter the "8/04/26 Call") to his wireless number, (843) 718-XXXX.

66. The 8/04/26 Call transmitted the Caller ID 843-286-2056, a non-working number.

67. The purpose of the call was to deliver a solicitation for home repair services for the Defendants.

68. The person calling identified himself as Christopher Nelson with "Home Care Services".

69. Indeed, it was the same Christopher Nelson from the 7/07/26 Call using the same fictitious company name used in the 7/07/26 call and the 8/03/26 Call.

70. The purpose of the call from Nelson was to sell Plaintiff home services on behalf of the Defendants.

71. The 8/4/26 Call was made after Plaintiff's verbal and written Do Not Call request to Defendant HGE on 7/07/26.

**The 8/5/26 Call**

72. On August 5, 2026, Plaintiff received a call (hereinafter the "8/05/26 Call") to his wireless number, (843) 718-XXXX.

73. The 8/05/26 Call transmitted the Caller ID 843-589-0598, a non-working number.

74. The purpose of the call was to deliver a solicitation for home repair services for the Defendants.

75. The person calling identified himself as James with "Home Care Services".

76. James used the same fictitious company name as used in the 7/07/26 Call, 8/03/26 Call and 8/04/26 Call.

77. The purpose of the call from James was to sell Plaintiff home services on behalf of the Defendants.

78. The 8/4/26 Call was made after Plaintiff's verbal and written Do Not Call request to Defendant HGE on 7/07/26.

**Vicarious Liability**

79. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing may be held vicariously liable under federal common law principles of agency for violations of section 227(b) or section 227(c) that are committed by third-party telemarketers. In re DISH Network, LLC, 28 FCC Rcd. 6574 ¶ 1 (2013).

80. HGE is liable for telemarketing calls placed by its lead generator, John Doe, and transferred to HGE to generate customers for HGE, including Plaintiff.

81. Upon information and belief, HGE sought to hire a lead generator like John Doe capable of placing outbound calls to potential customers, vetting those customers, and transferring and selling only purportedly interested consumers to HGE.

82. HGE controlled the day-to-day activities of John Doe, the party making the Calls by providing specific criteria for acceptable leads, including geographic location, homeownership status, and eligibility for specific home improvement services, and required its vendors to adhere to those criteria.

83. HGE authorized the calls to consumers for the purpose of generating leads for HGE and to transfer and sell those leads directly to HGE once a consumer was deemed qualified so that HGE could then call to finalize the sales pitch and set the appointment.

84. HGE paid for leads that met HGE's predefined criteria, thereby exercising control over John Doe, and the substance and effectiveness of the telemarketing calls.

85. HGE accepted the benefits of the unlawful telemarketing calls by receiving qualified leads, scheduling in-home appointments, confirming those appointments by telephone and text message, and dispatching HGE representatives to meet with consumers.

86. HGE ratified the conduct by knowingly accepting and acting upon leads generated through unlawful telemarketing calls, including calls made using prerecorded or artificial voice technology and calls to numbers listed on the National Do Not Call Registry.

87. HGE had the authority and ability to terminate its relationship with John Doe upon learning of unlawful or noncompliant telemarketing conduct.

88. HGE failed to terminate, suspend, or adequately supervise John Doe despite the illegal nature of the telemarketing calls used to generate HGE's leads.

89. As such, HGE knowingly ratified, approved, and benefitted from the telemarketing conduct.

90. Under principles of actual authority, apparent authority, and ratification, HGE is vicariously liable for the unlawful telemarketing calls by John Doe on its behalf.

91. The Calls were unwanted and nonconsensual encounters.

## CAUSES OF ACTION

### Count One:
### Violations of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

92. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

93. By placing five (5) telemarketing calls to the Plaintiff's telephone number, which he registered on the National Do-Not-Call Registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff's number on their Do-Not-Call list, Defendants jointly and severally, violated 47 U.S.C. § 227 (c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

94. These violations were wilful or knowing.

95. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), and Plaintiff is entitled to an award of $500 - $1,500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R.§64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

**Count Two:**
**Violations of the TCPA's Implementing Regulations**
**47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1601(e)**

96. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

97. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

98. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

99. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing five (5) telemarketing calls to be initiated to Plaintiff in a 12-month period, without providing a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, as well as by using "spoofed" caller IDs that did not allow consumers to lodge a do-not-call request during regular business hours.

100. These violations were willful or knowing.

101. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), and Plaintiff is entitled to an award of $500 - $1,500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R.§64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

**Count Three:**
**Violations of the TCPA's Implementing Regulations**
**47 U.S.C. § 227(b)(1)(A)(iii) and/or (b)(1)(B)**

102. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

103. The Defendants violated the TCPA by sending or causing to be sent at least two (2) calls to Plaintiff using a pre-recorded messages without their prior express written consent.

104. As a result of Defendants' violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

105. These violations were willful or knowing.

106. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), and Plaintiff is entitled to an award of $500 - $1,500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 U.S.C. § 227(b)(3).

**Count Four:**
**Violations of the South Carolina Telephone Privacy Protection Act ("SCTPPA")**

107. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

108. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the SCTPPA, including: (a) initiating five (5) calls to a telephone number on the federal Do Not Call Registry (b) the failure to "shall provide, in a clear and conspicuous manner,

a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made"

109. The Defendants' violations were negligent and/or knowing.

110. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA as well as attorneys' fees and costs. S.C. Code § 37-21-80.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

- For the statutory damages of $500 to $1,500 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the TCPA;
- For the statutory damages of $1,000 to $5,000 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the SCTPPA;
- For an award of attorneys' fees pursuant to the SCTPPA;
- For unspecified punitive damages in an amount to be determined by the jury.

August 26, 2026

Respectfully Submitted,

Jay Connor Plaintiff, *Pro Se*
215 East Bay Street 201-F
Charleston, SC 29401
Jayc650@hush.com
(843) 557-5724 (Residential)